We'll hear counsel in Bascunan v. Elsaca Good morning. May it please the court. My name is Robin Alperstein and I represent the plaintiff's appellant, none of whom is a resident of the United States. This case presents an issue of first impression in the circuit courts in this country. How should courts determine whether a RICO injury is domestic? The district court adopted a simple test. It decided that a plaintiff suffers economic injury, the only type of injury cognizable under RICO, at a plaintiff's residence or principal place of business. Based solely on the plaintiff's foreign residence, it dismissed our lawsuit. This court should reverse. The domestic injury inquiry should not start and then stop with the plaintiff's residence. The defendants in this case targeted the plaintiff's New York assets. They stole millions of dollars from New York investment and banking accounts, and they stole bearer shares from a New York safety deposit box. Those injuries occurred here. Where the plaintiff's reside does not change the fact that property in New York was damaged. A residency test is divorced from the language of RICO itself. It conflicts with the plain language of RICO, and it further conflicts with Nabisco. Section 1964C, which is of course the standing provision of RICO, provides, quote, any person injured in his business or property by means of a violation of section 1962 can sue for recovery. In Nabisco, the Supreme Court held that a RICO injury must be domestic. However, it provided no test for determining whether an injury is domestic. But it did provide one guideline. At footnote 12, the Supreme Court said, and I quote, this does not mean that foreign plaintiffs cannot sue. The residence test conflicts with this guidance because in the RICO context, a rule that economic injuries are felt only where the plaintiff resides or has her personal place of business reduces to a per se bar on foreign plaintiffs. And the reason for that. Does the alternative mean that any time that a fraud is alleged or the predicates are some type of fraud and money is transferred out of a New York account, that there's a domestic injury? If there's the requisite predicate acts in conduct in the United States, I think that if there is an account in the United States, in New York, for example, where the money is stolen as a result of a fraud, then the answer to that question would be yes. Because the issue really is, where was the plaintiff parted from his or her property? And in the context of RICO, because all injuries are economic, if you use a residency test, there will be a default that if it's just where they reside, there will be no other answer. And we can't have that in the RICO context for the following reason. The definition of person, which is of course any person injured in her business or property in the statute, is defined in section 1961 sub 1, which defines a person as any individual or entity capable of holding a legal or beneficial interest in property. If you exclude foreign plaintiffs from that definition, you violate the plain terms of that language, which is broad. And of course, the Supreme Court reaffirmed that in effect in footnote 12, when it said the new domestic injury requirement does not mean that foreign plaintiffs can't sue. The residency rule also conflicts with the Supreme Court's observation, again in Nabisco, that the application of the domestic injury rule will not always be straightforward. Almost every court to consider this issue, even those that have ultimately determined that the economic injury was found and suffered at the plaintiff's principal place of business or residence, has examined the property or the business interest and looked at whether it was located within the United States at the time of the injury. With perhaps two exceptions, these courts did not simply hold that economic injuries can only be suffered at the place of residence or principal place of business. They considered the nature of the property interest. They considered the nature of the injury. And they considered whether the injured business or property was located within the United States. You see this analysis in Citi v. Elmati. You see it in Elsevier. You see it in Lee v. Son. In the CEDVED case from a few weeks ago. In Garcia v. Mexican Lion. In Tatung and others as described in our brief and as well as our 28-J letter from earlier this week. And so, while we certainly agree with the line of cases that say that the focus of the inquiry must be on the geographic location of the proprietary injury and not on the place of the underlying conduct, those cases also do consider whether the defendants targeted assets in the United States as opposed to out of the United States. And so the test that we propose is that the plaintiff suffers her injury to her business or property where that business or property is located at the time of the injury. And of course, in many cases, that injury will occur at the plaintiff's place of business or residence. The distinction that we're drawing here, and this is crucial, is that the mere fact of a plaintiff's residence standing alone cannot dictate the place of inquiry consistent with RICO. The test that we propose is also grounded in the statute's text as well as in the language of NABISCO. Specifically, it tracks the Supreme Court's statement that plaintiffs must allege, and I quote again, a domestic injury to their business or property. And that's at 136 Supreme Court 2111. And that language itself is of course derived from the language of 1964C itself. Because this test is explicitly tethered to the location of the property or business activity in the U.S., it advances the remedial goals of RICO as well as the policy concerns behind the presumption against extraterritoriality. Specifically, it provides the protections of U.S. law only to property and business activity that occur here within our borders. And other nations, of course, fully expect that the United States is going to regulate and offer protections to property and business activity here as opposed to abroad. Ms. Alperstein, let me draw your attention to a case that I know you're aware of. And it's a recent decision of our court which at first blush seems to cause you some trouble or might cause you some trouble because we used the residency test similar to the one that's adopted by the district court in this case. I'm referring to Atlantica Holdings Inc. v. Sovereign Wealth Fund, etc. You know the case I'm referring to? I do. Why don't you address your view on that case and whether it presents the problem that I think it may pose for you? Well, two reasons. I don't think it actually presents a problem for us, but thank you for the question. First, it did not actually adopt a residency rule. Second, it comes from a completely different context. And I think that context is significant and critical and dictates the outcome here. The RICO statute, as I mentioned already, allows foreign plaintiffs to sue. And because all RICO injuries are economic injuries, a default rule that says economic injuries simply occur or are suffered at the place of residence would categorically bar all foreign plaintiffs from suing. That wasn't the case in the context of the state of this case. So you have to obviously look at the context of the statute itself as well as its purposes. I think that's the key reason. That was in the context of a securities fraud claim. Yes. And how and why is that different from this context? Well, because securities fraud is a different underlying type of claim. A RICO statute is obviously a hybrid of predicate acts. It has different purposes, different goals, and it also has different definitions for who can sue. And the other issue is that that interpretation in the Atlantic case does not have the effect of foreclosing an entire category of plaintiffs that Congress specifically included as being within the statute and unable to sue. So I think that's the key difference. Thanks very much. You've reserved two minutes. We'll hear from Ms. Salendi. Thank you. May I please the court? I'm Jennifer Salendi, and I have the privilege here of representing the appellees here today. We agree that this is an important matter of first impression, but the argument that Your Honors have just heard from the appellants is based on a faulty construction of the district court's decision on appeal here. Addressing the question of domestic injury under Section 1964C of RICO, in the aftermath of the RJR Nabisco case, the district court did articulate a simple rule, but it was also a narrow rule that applies to one type of alleged property injury, and that's monetary injury. Yet it is clear from the appellants' papers and their argument here today that they are giving an implausibly expansive interpretation of the district court decision in order to argue legal error and mischief where none really exists. Section 1964C grants standing to a person, a person injured in his business or property, and RJR Nabisco directed the district court to determine where such persons, in this case, Mr. Bascuñan and his foreign companies, suffered their injury. Because specifically, RJR Nabisco held that a plaintiff who alleges that he was injured in his business or property must show that he suffered that injury in the United States and not abroad in order to have a private right of action. Now relying solely on the allegations in the complaint, the district court first concluded what type of injury had been suffered. That the alleged RICO injuries in this case were solely monetary. They were pecuniary injuries. After discussing each of the alleged RICO schemes, the court noted that $64 million or thereabouts was allegedly wired or otherwise taken from appellants' accounts in New York and elsewhere. That is the only type of injury that was found and described by the district court. Thus, the only question that the district court was addressing below was where does a foreign citizen suffer a purely pecuniary injury when he is allegedly defrauded of cash wired out of his New York bank and investment accounts? Picking up on the Supreme Court's language that was focusing on where the plaintiff suffers an injury, the district court adopted a residence rule for would-be RICO plaintiffs whose injury is the loss of money. The test unduly keeps foreign plaintiffs out of court in cases where we might be troubled, more troubled than we are in a case where the alleged fraudster is also a nonresident and much of the activity occurs in a foreign country. But how about a case in which a money manager here gets the power of attorney and essentially siphons money out of bank accounts and gets bearer bonds out of a safety deposit box and defrauds a foreign resident? But pursuant to this test, would we just say, well, the injury is suffered in France, although all the fraudulent conduct took place here by an American of a foreign plaintiff who wants to sue under RICO, our American courts are just not available to him? Your Honor, I think the RJR Nabisco case answered that, that there may be some extreme cases where a foreign plaintiff does not have a RICO cause of action, a private RICO cause of action. You should not be concerned about that because that does not deprive the attorney general of bringing a RICO cause of action. If there were foreign plaintiffs were being targeted in a RICO scheme in the United States, there would certainly be a RICO remedy for that. That could be a public remedy, and there would also be state law remedies for that. So it is not a question of depriving those victims of any remedy. It's saying that the private right of action is limited to those plaintiffs who have domestic injury. What about a U.S. citizen who resides permanently abroad? That would be a concern under the appellant's proposed rules. That's one of the arguments that we've made, Your Honor, that if an American citizen has their bank accounts abroad and the test is the place of the location of an account, an American citizen could be subject to a U.S.-based RICO scheme and not have a cause of action simply because he or she kept a bank account abroad. What about the American expat who has her bank accounts here in the United States but resides permanently abroad? Under the theory adopted by the district court, her residence is in Great Britain, for example. She wouldn't be able to bring a RICO claim, right? I'm not sure. I think these are very fact-specific cases. So we can imagine a scenario where the expat whose money, who lives abroad, whose residence is abroad, but has money and property and business in the United States, and if they would enjoy their wealth, where they suffer their injury is the test. And there are exceptions under the district court's ruling to the residency test when there are examples where the place where the plaintiff would really enjoy their wealth is the United States, when that's the center of their economic life or their business. So it's not necessarily the case. There is no absolutist rule that was adopted by the district court. That's really our point here. It's not. It was on the facts of a foreign Chilean citizen, a resident of Chile, who suffered his alleged harm of not having the wealth that he only enjoyed in Chile. He suffered his injury there. It's undisputed in this case that the appellant did not and could not come to the United States during the 10 years that his estate was managed by the appellee. Indeed, his complaint alleges specifically that he intended his wealth to be managed to generate income to fund his charitable activities that were solely in Chile, primarily a fashion museum in Santiago. Nothing in the district court's decision suggests that he intended to announce a rule that would apply beyond the circumstances of this purely pecuniary injury for a foreign citizen and somehow apply to all RICO persons alleging all types of injuries. We know that there are many possible types of injuries to property and to business in the United States that this court did not speak to. The district court properly rejected appellant's proposed rule, which focused on the location of his accounts, because that test ignores the Supreme Court's key language about where the injury is actually suffered by the appellant. And it also ignores the statutory language in 1964C that refers to a person who is injured in his business or property, not, as the plaintiffs say in their briefs, to just an injury to business or property. So under their proposed rule, as I mentioned, a foreign citizen with vast wealth, including accounts in the United States, could forum shop for treble damages remedy provided by RICO and, like the appellant in this case, could use New York courts for a second bite at the apple when litigation in their own countries is not successful. It is undisputed here that appellant only filed this RICO action in New York after losing multi-year litigations at trial and on appeal in Chile. We do not want to open up our courts to that type of litigation because it does not serve Nabisco's presumption against extraterritoriality. And likewise, because New York is an international center of banking and investment, a rule that ignores the residence of the plaintiff and defines the mere loss of money held in a New York account as a domestic injury would certainly lead to more private actions by foreign citizens. Mere loss of money? It is a purely pecuniary injury is what I'm saying. We believe very strongly that the Atlantica Holdings case that is talking about a purely monetary economic harm. Explain to me. I'm not sure I fully follow this argument. Why is a merely money injury different from all other injuries to property? Why is that? Because, Your Honor, the language of RJR Nabisco refers to— No, no, no. I'm not sure that I want to go into the language of RJR Nabisco. I just want to have your explanation based as it might be on RJR Nabisco. Why should money—why would money be different from all other forms of property? Because the question is how does the plaintiff use their property? How do they enjoy their property? And money, wealth, is something that the district court recognized is primarily used where the party resides, where they are based, where their life is. And that's different from a business injury, and it's different from an injury to a physical piece of property that may more directly be tied to the United States. These investments by a Chilean citizen are like millions of other investments by foreign citizens in the United States who may never come here, who may not do business here, who benefit from our financial markets and our banks. All of that would seem to militate in favor of a decision adverse to you, that the fact they send the money here, keep it here, suggests they don't want to have it stolen here. Your Honor, I think it's just the opposite. I think that the presumption against extraterritoriality is saying that we really have to have a domestic injury that is meant to limit the scope of the application of RICO, not to expand it. To follow your line of thought, why isn't the injury, an enormous injury to the American financial system, and particularly to the financial system based in New York, if money kept here by foreigners can be taken with impunity, without an ability to invoke American law? It is certainly not taken with impunity. RICO's public enforcement mechanism would still apply to that, Your Honor. It is not a case that there would be no remedy. What would that remedy be? That remedy would be the Attorney General has the ability to sue for any type of racketeering activity that was targeting the bank accounts of foreigners. How much civil racketeering? How much? I'm not aware of that. I mean, I'm sure there is, but civil RICO enforcement, is that a major preoccupation of the Justice Department? Well, it certainly could be if there was a racketeering scheme that was targeting the wealth of foreigners. And your concern that somehow that would be threatening to our banking system that attracts foreign wealth, then I would think that would be a huge interest of the Justice Department to want to shut that down. The point is that they are not left without a remedy. The point is that they are left without a private cause of action that encourages forum shopping. Thanks very much. Thank you. We'll hear from Ms. Alperstein, who is reserved two minutes. Thank you. I want to address just a couple of points, if I may. I note that my adversary has focused on the language that this is only a pecuniary injury. It's only a monetary injury. It's only a financial injury. It's only an economic injury. And as I said before, and I think she has no response to, those are the only injuries compensable under RICO. She has instead suggested that the judge cabined the opinion to the fact that this involved money, putting aside the fact that money is also an economic injury. That is not, in fact, what Judge Daniels did. And to just go back to his opinion for one moment, he said the inquiry usually focuses upon where the economic impact of the injury was ultimately felt. Not felt at all, but ultimately in some existential sense, I suppose. So he didn't say this is simply money, as if there were a meaningful distinction between those two concepts. He had a broad vision of what this meant. And the courts who have looked at this and criticized this case have called it an absolutist rule and refused to apply it. Because they recognize that it acts as a per se bar on foreign plaintiffs. The defendants themselves effectively conceded that in their own papers. When they asked this court to affirm based on coming up with exception after exception after exception, trying to distinguish this case on the grounds that it involves economic injuries, even though as I've said a couple of times now, all injuries under RICO are economic. So I don't think that that is going to fly, the fact that it's purely pecuniary. That's the point. That's why it's a RICO injury. To take us back to the allegations here, this was New York property. And to go to a point that Judge Cabranes was making, foreign plaintiffs who put their money here deserve the protections and benefits of U.S. law for that property. And I'm suggesting that a residency rule, because it effectively immunizes domestic racketeering activity that is targeted specifically at the property of foreign residents, is just a bad rule. It conflicts with the remedial purposes of RICO. And it exacerbates rather than addresses the concerns regarding international friction. Because people who are abroad do expect to get the benefits of U.S. law when they put their property here. Taking all inferences in the light most favorable to the plaintiffs, we respectfully suggest and request that the court reverse the district court below. Thanks very much. Thank you. We'll reserve the decision and we are adjourned.